DAN RAYFIELD
Attorney General
LEANNE HARTMANN #257503
BRIAN SIMMONDS MARSHALL #196129
JOSEPH PLATT #262461
Senior Assistant Attorneys General
GALEN KNOWLES #T26051501, WSBA 59644
Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email: Leanne.Hartmann@doj.oregon.gov
Brian.S.Marshall@doj.oregon.gov
Joseph.Platt@doj.oregon.gov
Galen.Knowles@doj.oregon.gov

*Attorneys for the State of Oregon*

[Additional counsel to appear on signature page]

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| STATE OF OREGON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>OFFICE OF THE COMPTROLLER OF THE CURRENCY, et al.,<br><br>Defendants. | Case No. 3:26-cv-01672-SI<br><br>PLAINTIFF STATES’ OPPOSITION TO DEFENDANTS’ MOTION FOR A PARTIAL STAY OF PROCEEDINGS |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

I. INTRODUCTION .......... 1

II. BACKGROUND .......... 3

A. Plaintiffs enact interest-on-escrow laws to protect consumers. .......... 3

B. Courts largely uphold state interest-on-escrow laws against preemption challenges. .......... 3

C. Defendants issue unlawful rules purporting to categorically preempt state interest-on-escrow laws. .......... 4

D. Plaintiffs file this case to challenge those rules and redress their sovereign injuries. .......... 6

E. Defendants seek a stay that would indefinitely shield their unlawful rules from judicial review. .......... 6

III. LEGAL STANDARD .......... 7

IV. ARGUMENT .......... 8

A. A stay would not serve the orderly course of justice. .......... 8

B. Plaintiffs and consumers would suffer substantial harm from a stay. .......... 11

C. Defendants cannot establish hardship or inequity. .......... 13

V. CONCLUSION .......... 15



Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Accentcare Home Health of Rogue Valley, LLC v. Bliss*,
No. 1:16-cv-1393-CL, 2017 WL 2464436 (D. Or. June 7, 2017) ....................................10

*Allison v. Dolich*,
No. 3:14-CV-1005-AC, 2017 WL 7052909 (D. Or. June 21, 2017) ................................14

*Ashby v. Farmers Grp., Inc.*,
No. 01-CV-1446-BR, 2006 WL 3169381 (D. Or. Oct. 30, 2006) ....................................10

*Barnett Bank of Marion Cnty., N.A. v. Nelson*,
517 U.S. 25 (1996).........................................................................................................4, 5

*Boaz v. First Bank & Tr.*,
No. 6:21-cv-00084-AA, 2022 WL 17360541 (D. Or. Dec. 1, 2022).........................2, 9, 10

*Cantero v. Bank of Am., N.A.*,
49 F.4th 121, 134 (2d Cir. 2022) ........................................................................................4

*Cantero v. Bank of Am., N.A.*,
602 U.S. 205 (2024)...................................................................................................4, 9–10

*Cantero v. Bank of Am., N.A.*,
175 F.4th 201 (2d Cir. 2026) ........................................................................................4, 8

*Cantero v. Bank of Am., N.A.*,
No. 25-1313, 2026 WL 2976506 (U.S. Oct. 5, 2026)........................................................7

*Clark v. Bank of Am., N.A.*,
No. CV SAG-18-3672, 2020 WL 902457 (D. Md. Feb. 24, 2020) ....................................4

*CMAX, Inc. v. Hall*,
300 F.2d 265 (9th Cir. 1962) .........................................................................................2, 7

*Coal. for Econ. Equity v. Wilson*,
122 F.3d 718 (9th Cir. 1997) ..........................................................................................12

*Conti v. Citizens Bank, N.A.*,
157 F.4th 10 (1st Cir. 2025)..........................................................................................4, 8

*Conti v. Citizens Bank, N.A.*,
No. 25-1004, 2026 WL 2976960 (U.S. Oct. 5, 2026)........................................................7



Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

*Coyer v. HSBC Mortg. Servs., Inc.*,
701 F.3d 1104 (6th Cir. 2012) ....................................................................................3

*Cuomo v. Clearing House Ass'n*,
557 U.S. 519 (2009)....................................................................................................5

*DeBoer v. Mellon Mortg. Co.*,
64 F.3d 1171 (8th Cir. 1995) ..................................................................................12–13

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.*,
498 F.3d 1059 (9th Cir. 2007) ..............................................................................8, 11, 13

*Fed. Nat'l Mortg. Ass'n v. Lefkowitz*,
390 F. Supp. 1364, 1368 (S.D.N.Y. 1975)..................................................................3–4

*Fletes v. John I. Haas, Inc.*,
Civ. No. 89-85-FR, 1989 WL 151722 (D. Or. Nov. 29, 1989) ..................................10–11

*In re PG&E Corp. Sec. Litig.*,
100 F.4th 1076 (9th Cir. 2024) ...............................................................................10, 13

*Innovation L. Lab v. U.S. Immigr. & Customs Enf't*,
No. 3:25-cv-00066-AN, 2026 WL 1091798 (D. Or. Apr. 22, 2026)...........................12, 13

*Kivett v. Flagstar Bank, FSB*,
154 F.4th 640 (9th Cir. 2025) ....................................................................................4, 10

*Kivett v. Flagstar Bank, FSB*,
No. 25-1350, 2026 WL 2976547 (U.S. Oct. 5, 2026)........................................................7

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936).......................................................................................... *passim*

*Lockyer v. Mirant Corp.*,
398 F.3d 1098 (9th Cir. 2005) .......................................................................2, 7–8, 13, 14

*Lusnak v. Bank of Am., N.A.*,
883 F.3d 1185 (9th Cir. 2018) ..............................................................................4, 8–9, 12

*Murphy Co. v. Trump*,
No. 1:17-cv-00285-CL, 2018 WL 7377619 (D. Or. Feb. 14, 2018)..........................14–15

*Native Fish Soc'y v. Nat'l Marine Fisheries Serv.*,
No. 3:12-cv-00431-HA, 2013 WL 12321321 (D. Or. Aug. 8, 2013)................................14



Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

*Oregon v. Ashcroft*,
192 F. Supp. 2d 1077 (D. Or. 2002), *aff'd*, 368 F.3d 1118 (9th Cir. 2004), *aff'd sub nom.*, *Gonzales v. Oregon*, 546 U.S. 234 (2002) ....11–12

*Oregon Firearms Fed'n, Inc. v. Brown*,
644 F. Supp. 3d 782 (D. Or. 2022) ....12

*PharmacyChecker.com LLC v. LegitScript LLC*,
No. 3:22-cv-252-SI, 2022 WL 17496113 (D. Or. Dec. 8, 2022)....14

*United States v. Lasich*,
No. 3:02-cr-00305-BR, 2017 WL 6542791 (D. Or. Dec. 21, 2017)....10

*Yong v. I.N.S.*,
208 F.3d 1116 (9th Cir. 2000) ....14

**STATUTES**

12 U.S.C. § 25b(b) ....5

12 U.S.C. § 25b(c) ....5

Dodd-Frank Wall Street Reform and Consumer Protection Act,
Pub. L. No. 111-203, 124 Stat. 1376 (2010)....1

Cal. Civ. Code § 2954.8....3

Conn. Gen. Stat. § 49-2a....3

9-B Me. Rev. Stat. Ann. tit. § 429 ....3

Md. Code Ann., Com. Law § 12-109(b)(1) ....3

Mass. Gen. Laws ch. 183, § 61 ....3

Minn. Stat. Ann. § 47.20, subd. 9(a)....3

N.Y. Gen. Oblig. Law § 5-601....3

Or. Rev. Stat. § 86.245(2)....3

R.I. Gen. Laws § 19-9-2(a) ....3

Vt. Stat. Ann. tit. 8, § 10404(b) ....3



Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

## RULES

Bank Activities and Operations; Real Estate Lending and Appraisals,
69 Fed. Reg. 1904 (Jan. 13, 2004) ........................................................................5

Preemption Determination: State Interest-on-Escrow Laws,
91 Fed. Reg. 29350 (May 19, 2026) ...............................................................6, 12

Real Estate Lending Escrow Accounts,
91 Fed. Reg. 29340 (May 19, 2026) ....................................................................6

## OTHER AUTHORITIES

Fin. Crisis Inquiry Comm'n, *The Financial Crisis Inquiry: Final Report of the National Commission on the Causes of the Financial and Economic Crisis in the United States* xv (2011), https://www.govinfo.gov/content/pkg/GPO-FCIC/pdf/GPO-FCIC.pdf ..........................................................................................5

Nicolas Bagley, *The Unwarranted Regulatory Preemption of Predatory Lending Laws*,
79 N.Y.U. L. Rev. 2274 (2004) ........................................................................5

OCC News Release 2026-37 (May 15, 2026), https://www.occ.gov/news-issuances/news-releases/2026/nr-occ-2026-37.html [https://perma.cc/2744-WUMK]................................6

Order List of Oct. 5, 2026,
https://www.supremecourt.gov/orders/courtorders/100526zor_2a34.pdf .........................13



Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

## I. INTRODUCTION

Through this action, Plaintiffs seek to vindicate their sovereign interests in enforcing their interest-on-escrow laws by bringing an Administrative Procedure Act (APA) challenge to Defendants' rules that purport to preempt those laws as applied to national banks. Congress placed exacting limits on Defendants' ability to preempt state consumer protection laws in the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010). As alleged in the Complaint, Defendants' rules blatantly violate those limits for straightforward reasons. The parties agree that Plaintiffs' challenge requires no discovery outside the production of a complete administrative record. Pls.' Opp'n, ECF No. 20 at 7. Defendants have already waded into the merits of the case through their motion for partial dismissal. Defs.' Mot. to Dismiss, ECF No. 16. There is no reason why the legality of Defendants' rules could not be fully briefed within a matter of weeks through cross-motions for summary judgment.

Yet Defendants have filed a motion to stay this case pending resolution of Supreme Court proceedings involving different parties (consumers and their banks), different claims (breach of contract and similar claims), and a different procedural posture (preemption raised by way of a defense). Defs.' Mot. to Stay, ECF No. 17. Notably, nothing has changed in the Supreme Court proceedings since Defendants filed their pending motion to dismiss or transfer this case—which they seek to exempt from their stay motion. The Supreme Court has not determined whether to grant certiorari in any of those cases. Instead, the Supreme Court merely invited the views of the United States Solicitor General, with no deadline for the Solicitor General to file his briefing. Defendants thus effectively ask this Court for a license to nullify Plaintiffs' duly-enacted interest-on-escrow statutes, no matter how illegal those rules are, until some unknown date when the Supreme Court acts on the pending petitions (or rules on any petitions that are granted). Defendants' request for an indefinite stay should be denied.

When a party seeks a *Landis* stay pending the outcome of other litigation, the district court must weigh (1) "the orderly course of justice measured in terms of the simplifying or complicating



Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

of issues, proof, and questions of law"; (2) the possible damage that may result from a stay; and (3) any "hardship or inequity" that the movant would suffer if required to go forward. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). Defendants' motion largely fails to engage with these factors, and each one weighs heavily against a stay here.

*First*, Defendants suggest that a stay could result in simplification of the issues to be litigated if the Supreme Court grants one or more pending petitions for certiorari and decides that certain state interest-on-escrow laws are preempted. ECF No. 17 at 6. But such a ruling could not resolve most of the issues in this case, given that none of the pending petitions address the validity of the rules at issue here, implicate any of the statutory rulemaking requirements that apply to Defendants' preemption determinations, or even address most of Plaintiffs' interest-on-escrow laws. Moreover, Defendants' argument is premised on a nested series of contingencies that may never occur, including the Supreme Court granting certiorari, reaching the substantive preemption question, and deciding in favor of preemption. Courts do not stay cases based on such a "speculative possibility" that the petitions "might be accepted by the Supreme Court and that such an acceptance might result in a ruling more favorable" to one party. *Boaz v. First Bank & Tr.*, No. 6:21-cv-00084-AA, 2022 WL 17360541, at *1 (D. Or. Dec. 1, 2022).

*Second*, Plaintiffs will suffer substantial injuries to their sovereign interests and consumers across the country will suffer financial harm if Defendants are allowed to nullify Plaintiffs' duly-enacted consumer protection statutes during the pendency of a stay—harms that would be exacerbated by the indefinite nature of the stay that Defendants seek.

And *third*, Defendants identify no hardship from proceeding with this litigation, aside from the typical costs of discovery and briefing, which the Ninth Circuit has held "do[] not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer*, 398 F.3d at 1112 (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)) (vacating stay and allowing attorney general suit to go forward).



Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

For these reasons, and as set forth more fully below, Defendants' motion to stay should be denied.

## II. BACKGROUND

### A. Plaintiffs enact interest-on-escrow laws to protect consumers.

Starting in the 1970s, Plaintiffs have protected consumers from predatory escrow practices by requiring banks and other mortgage servicers to pay minimum interest on mortgage escrow accounts. *See* Cal. Civ. Code § 2954.8; Conn. Gen. Stat. § 49-2a; 9-B Me. Rev. Stat. Ann. § 429; Md. Code Ann., Com. Law § 12-109(b)(1); Mass. Gen. Laws ch. 183, § 61; Minn. Stat. Ann. § 47.20, subd. 9(a); N.Y. Gen. Oblig. Law § 5-601; Or. Rev. Stat. § 86.245(2); R.I. Gen. Laws § 19-9-2(a); Vt. Stat. Ann. tit. 8, § 10404(b); *see also* Compl., ECF No. 1 ¶¶ 40–49. Some states also prohibit service charges on escrow accounts in some or all circumstances. *See* Cal. Civ. Code § 2954.8; 9-B Me. Rev. Stat. Ann. § 429; Md. Code Ann., Com. Law § 12-109(b)(1); N.Y. Gen. Oblig. Law § 5-601; Or. Rev. Stat. § 86.245(2); *see also* ECF No. 1 ¶¶ 40, 42–43, 46–47. Before Plaintiffs enacted these laws, banks had free rein to use escrow account deposits to earn revenue without paying any interest, effectively obtaining "interest-free" loans from their own borrowers. *See* ECF No. 1 ¶¶ 33–51. Consumers could not avoid these abuses on their own because mortgages and servicing rights are traded on a secondary market and consumers generally cannot select their own mortgage servicer. *See, e.g., Coyer v. HSBC Mortg. Servs., Inc.*, 701 F.3d 1104, 1108 (6th Cir. 2012) (mortgagor could not state negligence and fraud claims against mortgage servicer that purchased the mortgage on the secondary market).

### B. Courts largely uphold state interest-on-escrow laws against preemption challenges.

For decades, state interest-on-escrow laws have faced challenges seeking to declare them preempted and for decades courts have consistently rejected those challenges. In *Federal National Mortgage Association v. Lefkowitz*, a federal district court with a three-judge panel dismissed claims brought by a federal mortgage lending institution challenging New York's interest-on-escrow law as preempted, finding that the law did not impose "such a burden on the performance



Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

of [the institution's federally-authorized] function as to invalidate the statute." 390 F. Supp. 1364, 1368 (S.D.N.Y. 1975). In *Lusnak v. Bank of America, N.A.*, the Ninth Circuit rejected a National Bank Act preemption defense, holding that California's interest-on-escrow statute does "prevent or significantly interfere with the exercise of national bank powers." 883 F.3d 1185, 1192 (9th Cir. 2018) (quoting *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 33 (1996)). A district court reached the same conclusion as to Maryland's interest-on-escrow statute in *Clark v. Bank of America, N.A.*, No. SAG-18-3672, 2020 WL 902457, at *8 (D. Md. Feb. 24, 2020). Most recently, in *Conti v. Citizens Bank, N.A.*, 157 F.4th 10 (1st Cir. 2025), the First Circuit held that the National Bank Act does not preempt Rhode Island's interest-on-escrow statute, and in *Kivett v. Flagstar Bank, FSB*, 154 F.4th 640 (9th Cir. 2025), the Ninth Circuit reaffirmed its prior holding that California's interest-on-escrow law is not preempted.

To date, only two decisions have reached a contrary result, both of which were issued by the same Second Circuit panel, and one of which the Supreme Court has already vacated. In *Cantero v. Bank of America, N.A.*, 49 F.4th 121 (2d Cir. 2022) (*Cantero I*), the Second Circuit held that New York's interest-on-escrow law was preempted because it would "target, curtail, and hinder" to any degree national banks' "power to create and fund escrow accounts." *Cantero I*, 49 F.4th at 134. The Supreme Court unanimously vacated that ruling, reasoning that the Second Circuit had adopted "a categorical test that would preempt virtually all state laws that regulate national banks," and remanding for the Second Circuit to apply the proper standard. *Cantero v. Bank of America, N.A.*, 602 U.S. 205, 220–21 (2024). On remand, the Second Circuit reached the same result it had before, over a dissent which criticized the majority for employing "an approach that is just as capacious" as the categorical test the Supreme Court has previously rejected. *Cantero v. Bank of Am., N.A.*, 175 F.4th 201, 216 (2d Cir. 2026) (*Cantero II*) (Pérez, J., dissenting).

**C. Defendants issue unlawful rules purporting to categorically preempt state interest-on-escrow laws.**

Against this backdrop of near-uniform judicial consensus that state interest-on-escrow laws



Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

are not preempted by federal law, the OCC has repeatedly sought to dictate its own categorical rule of preemption. In 2004, the OCC issued a sweeping regulation seeking to preempt fourteen broad categories of state banking law, including any "state law limitations" regarding "[e]scrow accounts" in connection with mortgage lending. *See* Bank Activities and Operations; Real Estate Lending and Appraisals, 69 Fed. Reg. 1904, 1916–17 (Jan. 13, 2004).

Within a few years, the United States experienced a housing crash and the most severe financial crisis since the Great Depression. Fin. Crisis Inquiry Comm'n, *The Financial Crisis Inquiry: Final Report of the National Commission on the Causes of the Financial and Economic Crisis in the United States* xv (2011), https://www.govinfo.gov/content/pkg/GPO-FCIC/pdf/GPO-FCIC.pdf. A Congressionally chartered commission and scholars alike concluded that the OCC's aggressive preemption efforts contributed to the crisis by crippling state efforts to prevent or limit predatory mortgage lending practices. *See id.* at 126; *see, e.g.*, Nicolas Bagley, *The Unwarranted Regulatory Preemption of Predatory Lending Laws*, 79 N.Y.U. L. Rev. 2274, 2275 (2004).

Congress responded by passing Dodd-Frank, which expressly overturned the 2004 preemption rule and instructed that future preemption determinations were subject to the "significant interference" test previously established by the Supreme Court in *Barnett Bank*, 517 U.S. at 33. 12 U.S.C. § 25b(b). Congress strictly limited the OCC's authority to make future preemption determinations; such determinations require individualized case-by-case findings, substantial evidence from the agency to support those findings, and limited judicial deference to future OCC preemption determinations. 25 U.S.C. § 25b(b)(3), (b)(5), (c). The Supreme Court also weighed in to confirm the invalidity of the OCC's overreaching 2004 rule, concluding that the OCC "attempt[ed] to do what Congress declined to do: exempt national banks from all state banking laws." *Cuomo v. Clearing House Ass'n*, 557 U.S. 519, 533 (2009).

Undeterred, the OCC has again attempted to preempt state interest-on-escrow laws. On May 19, 2026, the OCC published the Escrow Powers Rule and the Preemption Rule in the Federal Register. Real Estate Lending Escrow Accounts, 91 Fed. Reg. 29340 (May 19, 2026) (Escrow



Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

Powers Rule); Preemption Determination: State Interest-on-Escrow Laws, 91 Fed. Reg. 29350 (May 19, 2026) (Preemption Rule). Together, the Rules purport to preempt all state interest-on-escrow laws by granting national banks the exclusive power to determine the interest and fees associated with escrow accounts. The OCC issued a single press release titled "OCC Issues Two Final Rules on Preemption of State Interest-on-Escrow Laws," which hailed the agency's use of "federal preemption as a critical tool for reducing unnecessary burden, enabling local and national prosperity, and unleashing economic growth." OCC News Release 2026-37 (May 15, 2026), https://www.occ.gov/news-issuances/news-releases/2026/nr-occ-2026-37 [https://perma.cc/2744-WUMK].

**D. Plaintiffs file this case to challenge those rules and redress their sovereign injuries.**

On August 11, 2026, Plaintiff States filed this suit against Defendants to declare the Rules unlawful and set them aside. The Complaint contains detailed allegations describing each of the ten State interest-on-escrow laws enacted by Plaintiffs and the material differences between them. ECF No. 1 ¶¶ 40–49, 90. It explains that the Rules harm Plaintiffs' "sovereign interest in enforcing" these laws by purporting to preempt them. *Id.* ¶ 93. And it describes in detail how the Rules blatantly violate Dodd-Frank's strict procedural and substantive limitations on the OCC's preemption authority. *E.g.*, *id.* ¶¶ 77–79, 85–92. Based on these allegations, Count 1 of the Complaint alleges that the Escrow Powers Rule and the Preemption Rule violate the APA because they are contrary to law and were promulgated in excess of the OCC's statutory authority and in violation of procedure required by law. *Id.* ¶¶ 94–101. Count 2 alleges that the Rules are arbitrary and capricious. *Id.* ¶¶ 102–107.

**E. Defendants seek a stay that would indefinitely shield their unlawful rules from judicial review.**

Both sides agree that the issues in this case are legal in nature and require no further factual development after the OCC produces the administrative record. *See* ECF No. 16 at 26 ("[T]he OCC has no reason to expect that anything other than the administrative record will be necessary



Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

for a court's review . . . ."). Defendants have nevertheless attempted to delay adjudication of Plaintiffs' claims on the merits at every turn. When Plaintiffs first contacted Defendants to discuss production of the administrative record and a briefing schedule for cross-motions for summary judgment, Defendants declined to discuss either topic before their deadline to respond to the Complaint. On October 5, 2026, shortly before their deadline to respond, Defendants filed a motion to dismiss or transfer this case, raising standing, improper venue, forum non conveniens, and Rule 12(b)(6) arguments, which are meritless for the reasons explained in Plaintiffs' opposition. *See* ECF No. 16 (Defendants' motion to dismiss or transfer); ECF No. 20 (Plaintiffs' opposition).

Defendants then filed a separate motion for a partial stay four days later. ECF No. 17 (Stay Motion). At meet and confers in advance of both motions, Defendants reiterated their refusal to discuss production of the administrative record or a briefing schedule on cross-motions for summary judgment. Through the Stay Motion, Defendants seek to stay this case, with the exception of proceedings on their motion to dismiss or transfer, pending resolution of the Supreme Court's proceedings in *Conti v. Citizens Bank, N.A.*, No. 25-1004, 2026 WL 2976960 (U.S. Oct. 5, 2026); *Kivett v. Flagstar Bank, FSB*, No. 25-1350, 2026 WL 2976547 (U.S. Oct. 5, 2026); and *Cantero v. Bank of America, N.A.*, No. 25-1313, 2026 WL 2976506 (U.S. Oct. 5, 2026). For the reasons set forth below, the Stay Motion should be denied.

## III. LEGAL STANDARD

In assessing a motion for a *Landis* stay, district courts weigh (1) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law" that a stay will cause; (2) the possible damage that may result from a stay; and (3) any "hardship or inequity" that the movant would suffer if required to go forward. *Lockyer*, 398 F.3d at 1110 (quoting *CMAX*, 300 F.2d at 268). As *Landis* cautions: "'if there is even a fair possibility that the stay . . . will work damage to some one else,' the party seeking the stay 'must make out a clear case of hardship or inequity.'" *Id.* at 1112 (quoting *Landis*, 299 U.S. at 255).

"Only in rare circumstances will a litigant in one cause be compelled to step aside" pending



Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

resolution of other proceedings litigated by different parties. *Landis*, 299 U.S. at 255. And while the decision to grant a stay is left to the discretion of district courts, appellate review of that discretion is "somewhat less deferential" than in other contexts. *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007).

## IV. ARGUMENT

### A. A stay would not serve the orderly course of justice.

Defendants seek to satisfy the first *Landis* factor—which examines whether a stay would simplify the issues in the case—by claiming that a Supreme Court ruling in *Conti*, *Cantero*, or *Kivett* "would likely control or substantially affect the outcome of this case" if the Supreme Court "finds that state interest-on-escrow laws are preempted by the National Bank Act and preexisting OCC regulations." ECF No. 17 at 2.

As a threshold matter, Defendants are simply wrong to suggest that a Supreme Court ruling in favor of preemption would control or substantially affect Plaintiffs' claims. Unlike this case, which focuses on the OCC's unlawful administrative actions, the cases pending before the Supreme Court are private-party suits asserting contract and similar claims where a defendant national bank raised National Bank Act preemption as a defense. *E.g.*, *Conti*, 157 F.4th at 28 n.14 (plaintiff asserted "a breach of contract claim and, in the alternative, an unjust enrichment claim"); *Cantero II*, 175 F.4th at 208 ("breach of contract and other claims"). The validity or preemptive effect of the OCC's Rules are not at issue in any of those suits; they were filed (and the preemption issue was decided at the trial and circuit court levels) before the OCC finalized the Rules; and they involve situations where the defendant asks the court to dismiss consumers' claims for unpaid interest based on a defense that the underlying state interest-on-escrow law is preempted.

The Ninth Circuit has recognized that Dodd-Frank's rulemaking requirements that apply here "have no bearing . . . where the preemption determination is made by [a] court and not the OCC." *Lusnak*, 883 F.3d at 1194. For this reason, even if the Supreme Court grants certiorari and decides in favor of preemption in one or more of the pending petitions, this Court will still have to



Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

decide whether the OCC correctly followed applicable statutory procedures, whether the OCC exceeded its authority by issuing the twin rulemaking to preempt state laws, and whether the Rules are arbitrary and capricious. That determination must be assessed on the administrative record under basic APA standards. This Court can and should decide those issues now. The OCC's methodology cannot be cured or made less arbitrary by a later Supreme Court ruling, even one that the OCC perceives as aligning with the agency's desired outcome.

In addition, although Defendants claim that the Supreme Court's ruling could "involve application of the *Barnett Bank* standard to the same state laws that are at issue in this case," ECF No. 17 at 2, they neglect to mention that only three states' laws are at issue in the pending petitions: Rhode Island's (in *Conti*), New York's (in *Cantero*), and California's (in *Kivett*). As alleged in the Complaint, the other seven Plaintiffs have their own materially distinct interest-on-escrow laws. *See* ECF No. 1 ¶¶ 40–49 (describing differences between the Plaintiffs' laws). Thus, even if the Supreme Court concludes that Rhode Island's, New York's, and California's interest-on-escrow laws are preempted by the National Bank Act, this court will still need to determine whether the OCC's Rules complied with Dodd-Frank's procedural requirements and (if so) whether they correctly applied the *Barnett Bank* standard as to the interest-on-escrow laws of the other seven Plaintiffs.

Defendants' judicial efficiency argument also fails for another, independent reason: it is "based on a nested series of contingent possibilities" that may never occur. *Boaz*, 2022 WL 17360541, at *1. *First*, Defendants assume that the Supreme Court will grant certiorari in one or more of those cases, rather than simply denying the petitions. *Second*, Defendants assume that the Supreme Court will decide the preemption question, rather than remand that issue for lower courts to decide in the first instance, as it did last time the issue was presented for review. *See Cantero*, 602 U.S. at 209 (vacating and remanding for the Second Circuit to apply the correct preemption standard); *see also Kivett*, 154 F.4th at 646 ("*Cantero* did not decide whether the [National Bank Act] preempts state interest-on-escrow laws . . . ."). And *third*, Defendants assume that the



Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

Supreme Court will decide the preemption question in their favor, despite the majority of courts having ruled against preemption of interest-on-escrow laws, and despite the Supreme Court having unanimously vacated the Second Circuit's outlier preemption ruling only two years ago. The Court should not stay this case based on such a "speculative possibility" that the pending petitions "might be accepted by the Supreme Court and that such an acceptance might result in a ruling more favorable" to Defendants. *Boaz*, 2022 WL 17360541, at *1; *see also Accentcare Home Health of Rogue Valley, LLC v. Bliss*, No. 1:16-cv-1393-CL, 2017 WL 2464436, at *1 (D. Or. June 7, 2017) (declining to stay case "to simply delay the pains of litigation based on the speculative future outcome of" different proceedings).

As a fallback, Defendants suggest that, even if the Supreme Court does not decide the preemption question, it may still offer "clarified views on the legal standard at issue" that would provide a "significant" benefit to this Court "in turning to the merits." ECF No. 17 at 8. This too, conflates the issue presented in the pending petitions (application of the statutory preemption standard to three states' interest-on-escrow laws) with the issue here (the validity of OCC's Rules under the Dodd-Frank's procedural and substantive limitations on the agency's preemption authority). Regardless of the Supreme Court's actions, this Court is the proper place to determine the validity of the agency action challenged by Plaintiffs. *See* ECF No. 20 at 8–19.

Defendants' cases are not to the contrary. Defendants cite *In re PG&E Corporation Securities Litigation*, a case in which the Ninth Circuit *vacated* a similarly indefinite stay due to the district court's failure to weigh "the relative hardships" the stay "might cause." 100 F.4th 1076, 1087 (9th Cir. 2024). They also cite *United States v. Lasich*, No. 3:02-cr-00305-BR, 2017 WL 6542791, at *4 (D. Or. Dec. 21, 2017), a criminal case, and *Ashby v. Farmers Group, Inc.*, No. 01-CV-1446-BR, 2006 WL 3169381, at *1 (D. Or. Oct. 30, 2006), a private class action lawsuit, neither of which even applied the *Landis* factors. And in *Fletes v. John I. Haas, Inc.*, also cited by Defendants, the district court issued a stay only where there was a Supreme Court case scheduled to be argued in less than two months, that, depending on the outcome, could limit the Plaintiffs'



Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

damages "to $500" and make a trial wholly "unnecessary." Civ. No. 89-85-FR, 1989 WL 151722, at *1–2 (D. Or. Nov. 29, 1989). Even then, the court only stayed issuance of a trial date and still required the parties "to complete discovery and to file a pretrial order on the time schedule presently set." *Id.* at *2. In contrast, here Defendants seek an indefinite stay of the entire case (save for their motion to dismiss or transfer) based on three petitions for certiorari that have not been granted and which, even if granted and resolved in the way Defendants hope, would not come close to fully resolving Plaintiffs' claims.

**B. Plaintiffs and consumers would suffer substantial harm from a stay.**

The next *Landis* factor, which examines the potential prejudice that a stay would cause, also weighs against a stay here. As shown below, the stay Plaintiffs request would inflict substantial harm for an indefinite period on (i) Plaintiffs' sovereign interest in enforcing their laws and (ii) consumers by subjecting them to financially exploitative practices that Plaintiffs' laws were enacted to guard against. *See Dependable Highway*, 498 F.3d at 1066 (quoting *Landis*, 299 U.S. at 255). Moreover, a stay here would be especially pernicious because it would leave Rules in place indefinitely that purport to nullify interest-on-escrow laws across the country (even though most courts have upheld such laws against preemption challenges), while effectively immunizing those Rules from any legal challenge (no matter how blatantly unlawful they are). Defendants should not be permitted to circumvent litigation that has overwhelmingly upheld state interest-on-escrow laws by issuing rules that dictate a categorical rule of preemption and then use that very litigation as a shield to preclude any judicial scrutiny over the validity of their rules.

The Rules that Plaintiffs challenge in this case—which are already in effect—expressly target and purport to nullify each of Plaintiffs' interest-on-escrow laws. As such, the Rules have inflicted and continue to inflict injuries to Plaintiffs' "sovereign and legitimate interest in the continued enforceability of [their] own statutes." *Oregon v. Ashcroft*, 192 F. Supp. 2d 1077, 1087 (D. Or. 2002), *aff'd*, 368 F.3d 1118 (9th Cir. 2004), *aff'd sub nom.*, *Gonzales v. Oregon*, 546 U.S. 234 (2006); *see also* ECF No. 20 at 9–10 (collecting cases on sovereign injury). There can be no



Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

doubt that these sovereign interests are substantial. *See Oregon Firearms Fed'n, Inc. v. Brown*, 644 F. Supp. 3d 782, 812 (D. Or. 2022) ("Defendants have a substantial interest in enforcing validly enacted statutes."). Indeed, the Ninth Circuit has found it "clear that a state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined." *Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997). The Rules' nullification of Plaintiffs' duly-enacted statutes thus creates, at a minimum, a "fair possibility" of "work[ing] damage" to Plaintiffs during a stay. *Landis*, 299 U.S. at 255.

On top of these sovereign harms, permitting Defendants' Rules to stand during the pendency of any stay will also have the predictable—and intended—effect of causing national banks to cease paying the mandated interest on mortgage escrow accounts to consumers. While Plaintiffs do not rely on consumer harm to establish standing, *see* ECF No. 20 at 12, this Court may consider the harm to nonparties such as consumers when weighing the *Landis* factors, *see Landis*, 299 U.S. at 255 (referring to damage a stay would cause "to some one else"); *Innovation L. Lab v. U.S. Immigr. & Customs Enf't*, No. 3:25-cv-00066-AN, 2026 WL 1091798, at *4 (D. Or. Apr. 22, 2026) (denying stay that "may cause significant harm to plaintiff and numerous nonparties"). As Defendants acknowledge, the Rules "will likely result in a decrease in expenditures from OCC supervised entities that may elect not to pay interest on funds held in escrow accounts due to clarity on the preemption of state interest-on-escrow laws." *See* Preemption Rule, 91 Fed. Reg. at 29357. It is therefore beyond dispute that Defendants' requested stay will enable national banks to treat the large positive balances on escrow accounts as "interest-free" loans, thereby padding their own bottom line at the expense of consumers across the country. *See Lusnak*, 883 F.3d at 1188 (noting escrow "accounts often carry a significant positive balance"); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1173 (8th Cir. 1995) ("When the loan servicer maintains excess cushion in an escrow account, the servicer essentially receives an interest-free loan from the customer on the excess amount."). Such consumer harm also weighs against a stay. *Lockyer*, 398 F.3d at 1112 (vacating stay where there was "more than just a 'fair possibility' of



Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

harm to the Attorney General, and to the interests of the electricity consumers of northern California whose interest he seeks to protect").

These harms, moreover, are "heightened" because "the stay defendant[s] seek[] is indefinite." *Innovation L. Lab*, 2026 WL 1091798, at *2 (denying stay that was requested to extend until "some unknown time"); *see also In re PG&E Corp. Sec. Litig.*, 100 F.4th at 1084 (holding that a stay is indefinite where "its end date is triggered by the occurrence of an external event that is not time limited"). Here, Defendants tie their requested stay to "the resolution of the Supreme Court's proceedings in *Conti*, *Cantero*, and *Kivett*," but do not so much as hazard a guess as to when that might occur. *See* ECF No. 17 at 7 (acknowledging "this Court cannot fully predict the timing of Supreme Court proceedings"). The Supreme Court's recent order makes clear that it will not decide whether to grant certiorari in those cases until it receives briefing from the Solicitor General; the order imposes no deadline for the Solicitor General to file his briefing; and Defendants' Stay Motion provides no indication as to when those briefs will be filed. *See* Order List of Oct. 5, 2026, https://www.supremecourt.gov/orders/courtorders/100526zor_2a34.pdf. Even once the Solicitor General files his briefing, there remains uncertainty about when the Supreme Court will act on the petition, and when it will hear the merits of any petition that it grants. Given this posture, the date the petitions will be resolved is unknowable, but it is at least several months away—and possibly much longer. Meanwhile, Plaintiffs will continue to suffer injuries to their sovereign interests and consumers will continue to lose out on the interest payments to which they are legally entitled.

**C. Defendants cannot establish hardship or inequity.**

Finally, the *Landis* factors ask whether the movant would suffer any "hardship or inequity" from continuing to litigate the case. *Dependable Highway*, 498 F.3d at 1066 (quoting *Landis*, 299 U.S. at 255). Where—as here—there is at least "a fair possibility that the stay . . . will work damage to some one else," the party seeking the stay "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255. And where—as here—the movant seeks



Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

a stay that is lengthy or indefinite, an even stronger showing of prejudice to the movant is required. *See Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000) ("If a stay is especially long or its term is indefinite, we require a greater showing to justify it."); *Allison v. Dolich*, No. 3:14-CV-1005-AC, 2017 WL 7052909, at *3 (D. Or. June 21, 2017) ("Defendants have not offered the stronger showing of prejudice necessary when the term of the stay may be lengthy or is indefinite.").

The only hardship that Defendants claim in their Stay Motion is from "expending resources on merits briefing and the production and review of administrative records." ECF No. 17 at 6–7. But it is black letter law that the burden of "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer*, 398 F.3d at 1112; *see also PharmacyChecker.com LLC v. LegitScript LLC*, No. 3:22-cv-252-SI, 2022 WL 17496113, at *2 (D. Or. Dec. 8, 2022) (Simon, J.) ("Proceeding with discovery is a normal process of litigation, not an undue hardship.").

Defendants' claim of burden is even weaker than the usual case given the parties' agreement that no discovery outside the production of a complete administrative record is necessary, and the lack of any indication from Defendants that the administrative record here is particularly large or burdensome. *See* ECF 16 at 26; Pls.' Status Report, ECF No. 18 at 5. Upon production of the administrative record, the parties can move this case toward a prompt resolution through summary judgment briefing, which does not constitute a legally cognizable hardship. *See Native Fish Soc'y v. Nat'l Marine Fisheries Serv.*, No. 3:12-cv-00431-HA, 2013 WL 12321321, at *2 (D. Or. Aug. 8, 2013) (concluding that summary judgment briefing in APA case will not "pull substantial resources" and is not "sufficiently onerous to meet the standard in *Landis*"). Indeed, the length of the requested stay would vastly exceed the time necessary to fully brief summary judgment for the Court, further undercutting any efficiency rationale for the stay. *See Murphy Co. v. Trump,* No. 1:17-cv-00285-CL, 2018 WL 7377619, at *4 (D. Or. Feb. 14, 2018) ("The uncertainty necessitated by issuing a stay with an unknown end date is in direct contravention of the Court's well-recognized ability to manage the disposition of cases on its



Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

docket, as well as the public's interest in the expeditious resolution of litigation.").

Finally, Defendants' attempt to carve out proceedings on their motion to dismiss or transfer from any stay underscores why the *Landis* factors tip decidedly against a stay. *See* ECF No. 17 at 8 (requesting stay "other than proceedings necessary to resolve the OCC's pending motion to dismiss or . . . transfer"). Defendants' one-sided stay proposal reveals that they have no objection to this case moving forward—so long as the parties litigate (and the Court decides) only the issues of Defendants' choosing. Defendants' preference for litigating their defenses rather than Plaintiffs' affirmative claims is not the sort of "clear hardship or inequity" that can justify a stay. If anything, the asymmetric nature of the Defendants' stay request renders it inequitable to *Plaintiffs*, independently warranting denial of the Stay Motion.

## V. CONCLUSION

In sum, Defendants seek an asymmetric and inequitable stay of this case, which would inflict substantial sovereign injuries on Plaintiffs and financial harm to consumers for an indefinite period, while avoiding no cognizable prejudice to Defendants, based on their hope that the Supreme Court might grant certiorari in one of three pending cases at some unknown date and might issue a decision that, even if in favor of preemption, would not resolve this case. The Court should decline the invitation and deny the Stay Motion.



Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

DATED October 23, 2026.

Respectfully submitted,

**DAN RAYFIELD**
Attorney General for the State of Oregon

By: *s/ Leanne Hartmann*
LEANNE HARTMANN #257503
BRIAN SIMMONDS MARSHALL #196129
JOSEPH PLATT #262461
Senior Assistant Attorneys General
GALEN KNOWLES #T26051501, WSBA 59644
Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel (971) 673-1880
Fax (971) 673-5000
Leanne.Hartmann@doj.oregon.gov
Brian.S.Marshall@doj.oregon.gov
Joseph.Platt@doj.oregon.gov
Galen.Knowles@doj.oregon.gov

*Counsel for State of Oregon*

**LETITIA JAMES**
Attorney General of the State of New York

By: *s/ Christopher L. Filburn*
Christopher L. Filburn
*Senior Enforcement Counsel*
Christian Reigstad
*Assistant Attorney General*
Bureau of Consumer Frauds & Protection
Mark Ladov
*Special Counsel*
28 Liberty Street, 20th Floor
New York, New York 10005
Tel.: 212.416.8303
Email: christopher.filburn@ag.ny.gov
Tel. : 212.416.8321
Email: christian.reigstad@ag.ny.gov
Tel. : 212.416.8240
Email: mark.ladov@ag.ny.gov

*Counsel for State of New York*

**ROB BONTA**
Attorney General
State of California

By: *s/ Caroline E. Wilson*
Caroline E. Wilson
*Deputy Attorney General*
Nicklas A. Akers
*Senior Assistant Attorney General*
Tina Charoenpong
*Supervising Deputy Attorney General*
455 Golden Gate Avenue, Suite 110000
San Francisco, CA 94102-7004
Tina.Charoenpong@doj.ca.gov
Callie.Wilson@doj.ca.gov

*Counsel for State of California*

**WILLIAM TONG**
Attorney General of Connecticut

By: *s/ Rebecca Borne*
Rebecca Borne
Assistant Attorney General
165 Capitol Ave
Hartford, CT 06106
(860) 808-5400
Rebecca.Borne@ct.gov

*Counsel for State of Connecticut*

**AARON M. FREY**
Attorney General of Maine

By: *s/ Suzanne Burke*
Suzanne Burke
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 04333
207-626-8456
Suzanne.burke@maine.gov

*Counsel for State of Maine*

**ANTHONY G. BROWN**
Attorney General
State of Maryland

By: *s/ Lauren Gorodetsky*
LAUREN GORODETSKY
Assistant Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202
410-576-7057
lgorodetsky@oag.maryland.gov

*Counsel for State of Maryland*

**ANDREA JOY CAMPBELL**
Attorney General of Massachusetts

By: *s/ Matthew Lashof-Sullivan*
Yael Shavit
*Chief, Consumer Protection Division*
Matthew Lashof-Sullivan
Daniel Bahls
*Assistant Attorneys General*
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
(617) 963-2192
Matthew.Lashof-Sullivan@mass.gov

*Counsel for the Commonwealth of Massachusetts*

**KEITH ELLISON**
Attorney General of Minnesota

By: *s/ Christopher M. Kaisershot*
Christopher M. Kaisershot
Assistant Attorney General
Kimberly Svendsen
Special Counsel
445 Minnesota Street, Suite 600
St. Paul, MN 55101
(651) 728-4173
christopher.kaisershot@ag.state.mn.us

*Counsel for the State of Minnesota*

**PETER F. NERONHA**
Attorney General for the State of Rhode Island

By: *s/ Jordan G. Mickman*
Jordan G. Mickman (RI Bar No. 9761)
Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2079
jmickman@riag.ri.gov

*Counsel for the State of Rhode Island*

**CHARITY R. CLARK**
Attorney General of Vermont

By: *s/ Jonathan T. Rose*
Jonathan T. Rose
Solicitor General
Office of the Attorney General
109 State Street
Montpelier, VT 05609
(802) 828-3171
jonathan.rose@vermont.gov

*Counsel for State of Vermont*